# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

CLAUDE RICHARD DAVIS,

    Defendant-Appellant.

UNPUBLISHED
March 15, 2016

No. 322977
Macomb Circuit Court
LC No. 2013-002221-FC

Before: M. J. KELLY, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM.

A jury convicted defendant of possession with intent to deliver 1,000 or more grams of cocaine, MCL 333.7401(2)(a)(*i*), conspiracy to possess with intent to deliver 1,000 or more grams of cocaine, MCL 750.157a, maintaining a drug house, MCL 333.7405(1)(d), and operating a vehicle without a license on person, MCL 257.311. The trial court sentenced defendant to concurrent prison terms of 12 to 30 years for the possession with intent to deliver and conspiracy convictions, and 70 days in jail for the maintaining a drug house and operating a vehicle without a license convictions. Defendant appeals as of right. For the reasons stated in this opinion, we affirm defendant's convictions, but remand for further proceedings pertaining to defendant's sentences.

This case arose when the post office flagged as "suspicious" a package sent from California to "Lisa Krause 25514 Mackinac Street Roseville, Mich 48066." The package was considered suspicious because it was mailed from a source state for drugs, was sent by express mail, had a handwritten label, the signature delivery requirement was waived, and a database search revealed that the names of the sender and recipient were not associated with the listed addresses. After a K-9 dog identified the package as having an odor of narcotics, a controlled delivery of the package was arranged.

The police conducted surveillance of the listed address before the package was delivered. They observed a white van, driven by Freddie Ross, defendant's employer and alleged co-conspirator, repeatedly circle the area, slowing down each time it approached the listed address. After the package was delivered, defendant placed it in his vehicle. A short while later, the police stopped defendant's vehicle. Defendant cooperated during the traffic stop, but appeared nervous. He consented to a search of his vehicle and a K-9 dog again reacted to the package, giving a positive response for the odor of narcotics. A large quantity of suspected cocaine was

-1-

found inside the package. Defendant denied knowing the contents of the package and claimed that the home's occupant had asked him to return the package to the post office because it had a wrong address.

During defendant's traffic stop, Ross repeatedly attempted to contact defendant by cell phone. Ross was also stopped and a search of his vehicle and home revealed items commonly associated with narcotics trafficking, including Ziploc bags, scales, a cutting agent, weapons, heat-seal packaging, and a money counter.

On appeal, defendant first argues that the trial court erred by allowing the prosecution to introduce evidence of other shipping labels that were similar to the one on the package in this case. Six labels identified packages mailed to Ross's address. Of the labels identifying packages mailed to the Ross's address, two identified the recipient as "C. Davis," and one was sent to "Kalvin Davis." Three labels identified packages mailed to defendant's address in the names of "Joyce Clark," "Misty Cantwell," and "Melissa Klein." Defendant argues that the labels were not relevant because they were not associated with the charged offense. He also argues that any probative value was substantially outweighed by the danger of unfair prejudice under MRE 403.[1] We disagree.

Generally, all relevant evidence is admissible. *People v Yost*, 278 Mich App 341, 355; 749 NW2d 753 (2008). Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Evidence is admissible if it sheds light on any material point in issue. *People v Murphy (On Remand)*, 282 Mich App 571, 580; 766 NW2d 303 (2009). Relevant evidence may be excluded if the probative value is substantially outweighed by the "danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

The prosecution's theory at trial was that defendant and Ross were part of a conspiracy to sell narcotics and, in furtherance of that conspiracy, defendant took possession of the package knowing that it contained 1,000 or more grams of cocaine. The prosecution argued that the labels were relevant to link defendant to the package in question and to discredit defendant's claim of misdelivery and lack of knowledge.

MRE 404(b)(1) prohibits evidence of other crimes, wrongs, or acts to prove character in order to show action in conformity therewith, but allows such evidence for other purposes, such

---

[1] We review the trial court's decision to admit the evidence for an abuse of discretion. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). When the decision to admit evidence involves a preliminary question of law, such as whether a rule of evidence precludes admission, this Court's review is de novo. *Id.* An abuse of discretion occurs when the court's decisions falls outside the range of principled outcomes. *People v Blackston*, 481 Mich 451, 460; 751 NW2d 408 (2008).

as to show motive, opportunity, intent, knowledge, or absence of mistake or accident. Here, defendant denied any knowledge of the contents of the package, claimed that it was misdelivered, and asserted that he merely agreed to return the package to the post office as requested. In order words, he contested knowledge and intent. The other shipping labels were probative as to those issues. The prosecution presented evidence regarding how narcotics traffickers use the United States Postal Service to ship drugs and avoid detection. Michael Lynch, a postal inspector, testified that west coast states serve as source states for drug shipments and that shipments of drugs: (1) commonly contain handwritten labels, (2) that the names of the recipients and the senders do not match the individuals living at the residences, (3) that the weights of the packages are fairly light, (4) that the packages are mailed by express delivery, and (5) that a signature upon delivery requirement is waived. He also testified that drug traffickers will commonly put notes on the boxes to indicate that the package is being returned to the post office. The package in question was flagged because it met this profile. The other shipping labels reflected that other packages meeting this same profile were sent to either defendant's address or Ross's address. Two of the shipping labels sent to defendant's address appeared to be prepared by the same writer, although one sender was identified as "Bill Stein" and the other was identified as "David Green." The same writer also appeared to have addressed two of the shipping labels to Ross's address. The fact that multiple packages fitting this profile were sent to defendant's and Ross's addresses rebutted defendant's claim that he did not know of the package's contents and that he believed the package had been misdelivered.

Next, defendant argues that there was insufficient evidence to convict him of conspiracy to possess with intent to deliver 1,000 or more grams of cocaine and of possession with intent to deliver 1,000 or more grams of cocaine.[2] We disagree.

Criminal conspiracy involves a defendant's course of conduct and unlawful agreement with a co-conspirator. *People v Grant*, 455 Mich 221, 236; 565 NW2d 389 (1997). The crime of conspiracy is complete upon the formation of an agreement. *People v Justice (After Remand)*, 454 Mich 334, 345-346; 562 NW2d 652 (1997). Proof of the conspiracy may be established by "the circumstances, acts, and conduct of the parties." *Id*. at 347. "To be convicted of conspiracy to possess with intent to deliver a controlled substance, the people must prove that (1) the defendant possessed the specific intent to deliver the statutory minimum as charged, (2) his coconspirators possessed the specific intent to deliver the statutory minimum as charged, and (3) the defendant and his coconspirators possessed the specific intent to combine to deliver the statutory minimum as charged to a third person." *Id.* at 349.

Further, to convict a defendant of possession with intent to deliver 1,000 or more grams of cocaine, the prosecutor must prove the following elements beyond a reasonable doubt: (1)

---

[2] Challenges to the sufficiency of the evidence are reviewed de novo. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). This Court must review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013).

that the recovered substance was cocaine; (2) that the cocaine was in a mixture weighing 1,000 or more grams; (3) that the defendant was not authorized to possess the cocaine; and (4) that the defendant knowingly possessed the cocaine with the intent to deliver. See MCL 333.7401(2)(a)(*i*); see also *People v Wolfe*, 440 Mich 508, 516-517; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Defendant challenges only the second and fourth elements. Whether a defendant knowingly possessed cocaine with the intent to deliver is an issue for the trier of fact. *People v Whittaker*, 187 Mich App 122, 128; 466 NW2d 364 (1991). "Actual delivery is not required to prove intent to deliver." *People v Fetterley*, 229 Mich App 511, 517; 583 NW2d 199 (1998). "Possession with intent to deliver can be established by circumstantial evidence and reasonable inferences arising from that evidence, just as it can be established by direct evidence." *Wolfe*, 440 Mich at 526. "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

The evidence showed that defendant was in possession of a package that was found to contain cocaine. Although the lab analyst testified regarding error rates in measurements, she testified that her analysis of the recovered substance confirmed the presence of cocaine and that the amount involved weighed 1.004 kilograms. This was sufficient to enable the jury to find beyond a reasonable doubt that the amount involved was 1,000 or more grams of cocaine.

Moreover, before the package was delivered, a white van, driven by Ross, was observed repeatedly circling the block and slowing down near the home where the package was to be delivered. Defendant was observed walking outside the recipient's home and talking on his cell phone. After the delivery, defendant took possession of the package and placed it in his vehicle. When the police stopped defendant's vehicle, defendant appeared nervous. The police discovered that the package contained 1,000 grams of cocaine, an amount inconsistent with personal use and indicative of preparation for individual sale. Ross's van was also stopped, and Ziploc bags and a cutting agent for cocaine were discovered inside the vehicle. Cell phones recovered from defendant and Ross reflected that they had been communicating with each other shortly before and after the package was delivered. A search of Ross's home led to the discovery of additional evidence of a drug delivery enterprise, including heat-seal packaging, scales, and a money counter.

Viewed in the light most favorable to the prosecution, the evidence was sufficient to allow the jury to find beyond a reasonable doubt that defendant and Ross had formed an agreement to sell drugs and, in furtherance of that agreement, defendant took possession of the package knowing that it contained a kilo of cocaine. It is also sufficient to show that he was planning to meet with Ross, with whom he had been communicating, when he was stopped by the police. The jury was not required to believe defendant's testimony that he was returning the package to the post office at the request of the home's occupant and did not know what was inside the package. Indeed, the jury could find that the similarly prepared shipping labels associated with defendant's own address refuted defendant's claimed lack of knowledge and happenstance possession of the package in question. Moreover, although defendant claimed that he was taking the package to an Office Depot with a post office, he allegedly told the police that he was travelling to the post office on Moross in Detroit, although other post offices were closer. Accordingly, on this record there was sufficient evidence to support defendant's convictions for

possession with intent to deliver 1,000 or more grams of cocaine and conspiracy to possess with intent to deliver 1,000 or more grams of cocaine.

Lastly, defendant seeks remand for sentencing under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).[3] In *Lockridge*, our Supreme Court concluded that Michigan's sentencing guidelines violate the Sixth Amendment to the extent that offense variables are required to be scored on the basis of facts not admitted by the defendant or necessarily found by the jury to mandatorily increase the floor of the guidelines range. *Id.* at 365, 373-374. To remedy this violation, the Court held that the guidelines are to be deemed advisory only. *Id.* at 365, 391. The Court further struck the requirement that a departure from the applicable guidelines range be based on a substantial and compelling reason for that departure. Rather, a departure sentence is to be reviewed by the appellate court for reasonableness. *Id.* at 364-365, 391-392.

In *Lockridge*, the Court addressed the application of its decision to other cases, like this one, where the issue is unpreserved and review is for plain error affecting substantial rights. The Court stated that if "(1) facts admitted by the defendant and (2) facts found by the jury were sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced. . . . the defendant suffered no prejudice from any error, there is no plain error and no further inquiry is required." *Id.* at 394-395.

Here, defendant received a total offense variable (OV) score of 100 points, which was attributable entirely to the scoring of OV 15, MCL 777.45 (aggravated controlled substance offenses). The court is required to assess 100 points for OV 15 if the "offense involved the manufacture, creation, delivery, possession, or possession with intent to manufacture, create, or deliver of 1,000 or more grams of any mixture containing a substance classified in schedule 1 or 2 that is a narcotic drug or a drugs described in section 7214(a)(*iv*)." MCL 777.45(1)(a). MCL 333.7214(a)(*iv*) provides that cocaine is a schedule 2 controlled substance. Accordingly, all of the facts necessary to score 100 points for OV 15 are necessary elements of the offense of possession with intent to deliver 1,000 or more grams of cocaine, which the jury found were proven beyond a reasonable doubt. Because the facts found by the jury were sufficient to support the 100 OV points used to calculate defendant's guidelines range, there is no plain error and defendant would not be entitled to relief under *Lockridge*.

Defendant argues, however, that regardless of whether judicial fact-finding affected his guidelines range, the case should be remanded for resentencing because the trial court's compulsory application of the guidelines itself violated *Lockridge*. He suggests that because the trial court sentenced him near the low end of the guidelines range, and because *Lockridge* holds that the guidelines are now advisory, the case should be remanded to allow the trial court to decide whether it would have imposed a materially different sentence in light of the advisory nature of the guidelines.

---

[3] Because defendant did not challenge the trial court's scoring or application of the sentencing guidelines on this ground at sentencing, this issue is unpreserved and review is limited to plain error affecting substantial rights. *Lockridge*, 498 Mich at 392.

In *People v Terrell*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket No. 321573); lv pending; slip op at 9, this Court stated that "regardless of the fact that judicial fact-finding did *not* increase defendant's minimum sentence guidelines range, the trial court's compulsory use of the guidelines was erroneous in light of *Lockridge*." (emphasis in original). Noting that "the trial court was not obligated to sentence defendant within the minimum sentence guidelines range and, instead, was permitted to depart from the guidelines range without articulating a substantial and compelling reason, so long as the resulting sentence was itself reasonable," the Court held that "a remand for the *Crosby*[4] procedure is necessary to determine whether the error resulting from the compulsory use of the guidelines was harmless." *Id*. Thus, although the trial court's decision to score 100 points for OV 15 was authorized by the jury's verdict, we nevertheless remand for a *Crosby* proceeding to determine whether the error resulting from the compulsory use of the guidelines was harmless. See *Lockridge*, 498 Mich at 398 (describing the procedure to be followed during a *Crosby* remand).

We affirm defendant's convictions, but remand for further proceedings consistent with this opinion with regard to defendant's sentence. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro

---

[4] *United States v Crosby*, 397 F3d 103, 117-118 (CA 2, 2005).