# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 22, 2017

Plaintiff-Appellee,

v

No. 332471
Saginaw Circuit Court

GEORGE JOSEPH BROWN,

LC No. 15-041661-FC

Defendant-Appellant.

Before: TALBOT, C.J., and BECKERING and M. J. KELLY, JJ.

PER CURIAM.

Defendant, George Brown, appeals by right his convictions, following a jury trial, of armed robbery, MCL 750.529, and conspiracy to commit armed robbery, MCL 750.529; MCL 750.157a. Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

This case arose following the armed robbery of Willie Farmer. The prosecutor's theory at trial was that Talia Laframboise and Brown drove to Farmer's house intending to rob him.[1] The defense theory was that Laframboise and someone else—possibly a new boyfriend—had committed the crimes. The defense further theorized that Laframboise had testified that Brown was with her during the armed robbery because she had a contentious breakup with Brown two months before the robbery and because she was trying to protect the other man. In support, the defense presented evidence that on the night of the robbery, Brown was home with his mother. The jury, however, rejected his alibi defense and convicted Brown of armed robbery and conspiracy to commit armed robbery.

This appeal follows.

---

[1] Laframboise testified that she was charged in connection with the incident at Farmer's house. She stated that she wanted to make a deal with the prosecutor's office but that, as of the time of trial, she had yet to reach an agreement.

-1-

## II.  SUFFICIENCY OF THE EVIDENCE

### A.  STANDARD OF REVIEW

Brown first argues that there was insufficient evidence to convict him of conspiracy to commit armed robbery.  Challenges to the sufficiency of the evidence are reviewed de novo. *People v Henry (After Remand)*, 305 Mich App 127, 142; 854 NW2d 114 (2014).  "[W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992).  "All conflicts in the evidence must be resolved in favor of the prosecution*." People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

### B.  ANALYSIS

A conspiracy exists when "[a]ny person . . . conspires together with 1 or more persons to commit an offense prohibited by law . . . ."  MCL 750.157a.  "Conspiracy is a specific-intent crime, because it requires both the intent to combine with others and the intent to accomplish the illegal objective." *People v Mass*, 464 Mich 615, 629; 628 NW2d 540 (2001).  Because of the clandestine nature of criminal conspiracies, "direct proof of the conspiracy is not essential; instead, proof may be derived from the circumstances, acts, and conduct of the parties." *People v Justice (After Remand)*, 454 Mich 334, 347; 562 NW2d 652 (1997).  "For intent to exist, the defendant must know of the conspiracy, must know of the objective of the conspiracy, and must intend to participate cooperatively to further that objective." *People v Blume*, 443 Mich 476, 485; 505 NW2d 843 (1993).  The essence of conspiracy is an unlawful agreement, and the crime is complete with the formation of the agreement. *Justice (After Remand)*, 454 Mich at 345-346. The elements of armed robbery are:

> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007).]

Brown argues that there is insufficient evidence to establish that he conspired with Laframboise to commit armed robbery.  In support, he notes that Laframboise indicated that she was unaware that Brown was going to enter Farmer's house and assault him.  However, the prosecutor presented evidence that Laframboise and Brown arrived together.  Laframboise stated that they were going to purchase Vicodin pills from Farmer and split the money they would make reselling the pills.  She stated that when they arrived, she went inside alone and counted the pills into a plastic bag to make sure they were all there.  She added that Brown, who was outside, was going to pay for the pills.  After making sure the pills were there, she either went outside or started to go outside, and Brown came inside and hit Farmer with a wooden bat that

belonged to Laframboise's son. Farmer fell to the floor, and Brown stood over him and threatened to hit him again if he tried to get up. Farmer testified that while he was on the floor, he could hear Laframboise "in the kitchen scraping up stuff" and "ram-shacking [sic] his house." Several items were missing after Brown and Laframboise left, including Farmer's keys, cell phone, and his prescription pills. Laframboise confirmed that after leaving Farmer's house with Brown, she saw Brown with the pills that she had counted into the plastic bag. She also testified that they had not paid for the pills. Viewing this evidence in the light most favorable to the prosecution, there is sufficient evidence to establish that Brown and Laframboise conspired to commit armed robbery.

## III. PROSECUTORIAL MISCONDUCT

### A. STANDARD OF REVIEW

Brown next argues that the prosecutor committed misconduct during rebuttal argument by denigrating the defense arguments, by arguing facts not in evidence, and by shifting the burden of proof. Brown did not object at trial, so the issue is unpreserved. See *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). We review unpreserved errors for "plain error affecting substantial rights." *Id*. " 'Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings.' " *Id*. at 475-476, quoting *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). Moreover, we will not find reversible error "where a curative instruction could have alleviated any prejudicial effect." *Bennett*, 290 Mich App at 476 (citation and quotation marks omitted).

### B. ANALYSIS

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). In reviewing a claim of prosecutorial misconduct, we examine allegedly improper remarks in context. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). It is improper for a prosecutor to suggest that a defendant's lawyer is "intentionally attempting to mislead the jury." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). Further, "the prosecution may never shift its burden to prove that defendant is guilty beyond a reasonable doubt and obligate the defendant to prove his innocence." *People v Rosales*, 160 Mich App 304, 312; 408 NW2d 140 (1987). Finally, a prosecutor may not make a statement of fact to the jury that is unsupported by the evidence. *People v Stanaway*, 446 Mich 643, 686; 521 NW2d 557 (1994).

Brown first argues that the prosecutor committed misconduct by calling the defense arguments "phantoms" and "red herrings." During closing argument, Brown's lawyer argued that Laframboise committed the armed robbery with "this other person that she wants to protect" and then blamed Brown because she had a "very contentious breakup" with him two months earlier. Brown's lawyer then suggested that it was "likely" that Laframboise had "a new boyfriend, or a new friend," that they wanted drugs but did not have money, so they planned to, and actually did, rob Farmer. In response, the prosecutor referred to the other person referenced by Brown's lawyer as a "phantom whatever." He noted that Laframboise had been on the stand, but had not been questioned about a new boyfriend. He suggested that the question had not been

asked because it is easier to argue Laframboise has a new boyfriend that happens to have the same build as Brown in the absence of direct testimony about whether such a man existed.

Brown's lawyer also argued that Brown was at his mother's house during the incident. He noted that Brown's mother had testified that Brown was present and that she remembered that date in particular because her "other son" had also been present. In response, the prosecutor asserted that if Brown's brother had something to add, "we would have heard from him." Collectively, the prosecutor referred to the arguments relating to the other person and Brown's brother as "red herrings" and "phantoms." He also referred to the defense theory as "hypothetical." Because the prosecutor's arguments with regard to Laframboise's alleged new boyfriend and with regard to Brown's brother were in direct relation to arguments made by Brown's lawyer in his closing argument, the prosecutor did not commit reversible error. *Dobek*, 274 Mich App at 64. Additionally, any prejudice caused by the comments could have been cured by a timely objection and curative instruction, so even if the comments were improper, they do not amount to reversible error. *Bennett*, 290 Mich App at 476.

Brown next argues that the prosecutor's comments improperly shifted the burden of proof by suggesting that Brown's lawyer should have asked Laframboise whether she had a new boyfriend during cross-examination. However, a prosecutor's commentary on a defense lawyer's failure to ask certain questions at trial does not shift the burden of proof to the defendant unless it implicates the defendant's right not to testify. *People v Fields*, 450 Mich 94, 111-113; 538 NW2d 356 (1995). Here, the prosecutor merely highlighted a weakness between Brown's lawyer's argument and the evidence produced at trial.

Further, although Brown argues that the prosecutor also improperly shifted the burden of proof by suggesting that Brown's brother should have been produced to corroborate his alibi defense, "where a defendant testifies at trial or advances, either explicitly or implicitly, an alternate theory of the case that, if true, would exonerate the defendant, comment on the validity of the alternate theory cannot be said to shift the burden of proving innocence to the defendant." *Id*. at 115. Here, Brown's mother testified that Brown was at her home at the time of the armed robbery. Because she provided Brown with an alibi and suggested that his brother was also in the home at the time, the prosecutor's comment that Brown's brother would have testified if his testimony could have helped the defense is not improper. Also, the prosecutor immediately followed his comments by acknowledging that "the burden of proof is with me." Further, the trial court instructed the jury that the prosecutor "must prove each element beyond a reasonable doubt," and "[t]he defendant is not required to prove his innocence or to do anything." Therefore, even if the comments were improper, because "[i]t is well established that jurors are presumed to follow their instructions," *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998), we discern no reversible error arising from the prosecutor's remarks.

Finally, Brown argues that the prosecutor committed misconduct by arguing matters not in evidence. Specifically, near the start of his rebuttal argument, the prosecutor stated, "We heard a lot of discussion about real bullying, which brings back memory of a 20 year old case where somebody has a warrant out for a real killer." The prosecutor also argued that if Laframboise had been asked if she had a new boyfriend her answer would have been "no." Both comments pertained to matters outside the evidence, given that Laframboise did not testify about a potential new boyfriend and there was no testimony about the 20-year-old case. However, the

comments were isolated and brief, and they did not likely deflect the jury's attention from the evidence. See *Unger*, 278 Mich at 237, 239. Additionally, the trial court instructed the jury that the statements of the lawyers were not to be considered as evidence, and this instruction lessened any prejudice. *People v Bahoda*, 448 Mich 261, 281; 531 NW2d 659 (1995). Again, jurors are presumed to follow instructions. *Graves*, 458 Mich at 486. Accordingly, we find that while the record did not support the statements, they were not so significant as to deny Brown a fair trial.

Affirmed.

/s/ Michael J. Talbot
/s/ Jane M. Beckering
/s/ Michael J. Kelly