# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRIA CORRINE BLACKMON,

        Defendant-Appellant.

UNPUBLISHED
November 28, 2017

No. 332644
Macomb Circuit Court
LC No. 2015-002498-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEMONTE MARCELLUS EASTERLING,

        Defendant-Appellant.

No. 332702
Macomb Circuit Court
LC No. 2015-002499-FC

---

Before: METER, P.J., and BORRELLO and RIORDAN, JJ.

PER CURIAM.

Defendants, Bria Blackmon and her half-brother DeMonte Easterling were tried jointly, before a single jury. The jury convicted Blackmon of first-degree premeditated murder, MCL 750.316(1)(a), first-degree felony murder, MCL 750.316(1)(b), armed robbery, MCL 750.529, conspiracy to commit armed robbery, MCL 750.157a, and illegal use of a financial transaction device, MCL 750.157n. The jury convicted Easterling of second-degree murder, MCL 750.317 (as a lesser offense of first-degree premeditated murder), felony murder, armed robbery, and conspiracy to commit armed robbery. The trial court sentenced Blackman to two terms of life imprisonment without the possibility of parole for her murder convictions, and concurrent prison terms of 225 to 480 months each for the robbery and conspiracy to commit armed robbery convictions, and 32 to 48 months for the illegal use of a financial transaction device conviction. The court sentenced Easterling to life imprisonment without the possibility of parole for his felony-murder conviction, and concurrent prison terms of 450 to 900 months each for his remaining convictions. Both defendants appeal as of right. For the reasons set forth in this opinion, we remand for modification of Blackmon's judgment of sentence to reflect a single

-1-

conviction and sentence for first-degree murder, supported by two alternative theories, and vacate Easterling's second-degree murder conviction, but affirm in all other respects.

## I.  FACTS

Defendants' convictions arise from the robbery and beating death of Michael Scott Freeland at his home in Sterling Heights, Michigan.  Freeland had posted an Internet advertisement seeking a submissive woman under the age of 30 who was willing to have his children.  Blackmon responded to the advertisement and began a relationship with Freeland. Early in the morning on March 27, 2015, about a week after Blackmon and Freeland began their relationship, Blackmon and Easterling went to Freeland's home.  Later that morning, authorities discovered Freeland's body inside his house after a neighbor reported a fire at the house.

An autopsy revealed that Freeland had several blunt force injuries to his face and head, including lacerations to his scalp and face, bruising on his scalp and face, multiple skull fractures, and injury to his brain.  He also had defensive wounds on his right forearm and hand. The cause of death was blunt force trauma to the head.

The prosecution's theory at trial was that both defendants beat Freeland, intending to kill and rob him.  A few days before the offense, Blackmon had tried to recruit a friend to kill an acquaintance.  Cell phone records showed that both defendants were in the area of Freeland's home on the morning of March 27, and surveillance recordings captured Blackmon purchasing gasoline at a Sunoco station and purchasing a computer tablet at a Meijer store with Freeland's credit card.  Other attempted purchases by Blackmon using Freeland's credit card were denied. A search of Blackmon's vehicle led to the discovery of a jacket with Freeland's blood and DNA on it.  Freeland had a medical marijuana card, and a jar of marijuana was also discovered inside Blackmon's vehicle.  Several of Freeland's credit cards and pieces of identification were discovered during a search of Blackmon's home.

Both defendants gave multiple statements to the police.  Blackmon initially admitted being at Freeland's home, and admitted striking him with lamp and a baseball bat after an argument, but claimed that he was alive and responsive when she left.  In a second statement, she again admitted hitting Freeland with a bat and a lamp after an argument, and also admitted taking his wallet. Easterling first told the police that he went with Blackmon to Freeland's house to buy marijuana, but denied being involved in any plan to assault or rob Freeland.  In a second statement, Easterling told the police that he punched Freeland and knocked him to the floor, and then took a laptop computer from his house.  Easterling said that, after leaving the house, he had his girlfriend pick him up and he threw a dumbbell out the car window while driving along I-75. The police later found two dumbbells along I-75 that contained Freeland's DNA.  Easterling testified at trial and denied assaulting or robbing Freeland.  He also denied telling the police that he assaulted or robbed Freeland.

## II.  ANALYSIS

## I.  DOCKET NO. 332644 (DEFENDANT BLACKMON)

## A.  INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, Blackmon first argues that she is entitled to a new trial because her trial attorney was ineffective for (1) failing to file a motion to suppress her statements to the police on the ground that they were not voluntarily made, and (2) failing to file a motion to sever her and Easterling's cases for trial. Because Blackmon failed to raise an ineffective assistance of counsel claim in an appropriate motion in the trial court, and this Court denied her motion to remand,[1] our review of this issue is limited to errors apparent on the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

To establish ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that counsel's representation was so prejudicial that she was denied the right to a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). A defendant must overcome the presumption that the challenged action amounted to sound trial strategy. *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991). In order to demonstrate prejudice, "the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001). A criminal defendant has the burden of producing factual support for her claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

1. FAILURE TO MOVE FOR SUPPRESSION OF BLACKMON'S STATEMENTS

Preliminarily, we note that the record discloses that defense counsel expressly considered seeking suppression of Blackmon's statements. A suppression hearing was scheduled for this purpose, but was adjourned pending the outcome of a forensic examination to determine Blackmon's criminal responsibility and competency to stand trial. After that examination, defense counsel decided not to pursue a suppression hearing. Thus, to establish ineffective assistance of counsel, Blackmon must overcome the presumption that counsel's decision to withdraw the suppression motion fell below an objective standard of reasonableness.

Blackmon argues that her police statements should have been suppressed because they were not voluntarily made. Whether a defendant's statement was voluntary is determined by examining the conduct of the police. *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005). "[T]he voluntariness prong cannot be resolved in defendant's favor absent evidence of police coercion or misconduct." *People v Howard*, 226 Mich App 528, 543; 575 NW2d 16 (1997). In *Tierney*, 266 Mich App at 708, this Court explained:

> In determining voluntariness, the court should consider all the circumstances, including: "[1] the age of the accused; [2] his lack of education or his intelligence level; [3] the extent of his previous experience with the police; [4] the repeated and prolonged nature of the questioning; [5] the length of the detention of the accused before he gave the statement in question; [6] the lack of any advice to the accused of his constitutional rights; [7] whether there was an

---

[1] *People v Bria Blackmon*, unpublished order of the Court of Appeals, entered January 4, 2016 (Docket No. 332644).

unnecessary delay in bringing him before a magistrate before he gave the confession; [8] whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; [9] whether the accused was deprived of food, sleep, or medical attention; [10] whether the accused was physically abused; and [11] whether the suspect was threatened with abuse." *People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988). No single factor is determinative. *Sexton, supra* [461 Mich] at 753. "The ultimate test of admissibility is whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made." *Cipriano, supra* at 334.

Blackmon claims that she was subjected to a four-hour interrogation, during which she was cut off from family and friends, and that her interview ended only when the police observed that she was going through extreme highs and lows. Blackmon appears to rely on a police report to support these claims, but that report is not part of the record. Blackmon refers generally to police tactics and promises, which she contends support her claim that her statement was not voluntarily made, but the existing record does not include information about any police conduct that can be considered threatening or coercive. Blackmon emphasizes that she was arrested at her place of employment, her cell phone was taken from her, and she was confined in a small interview room where she was questioned, but those procedures are not particularly unusual for a murder suspect and they do not demonstrate that Blackmon's statements were not freely and voluntarily made. Even accepting that the interview lasted four hours, that length of time is not so extreme to establish that Blackmon's statements could not have been freely and voluntarily made.

Blackmon's primary basis for challenging the voluntariness of her statements concerns her competency to make a voluntary statement based on her psychological condition. She contends that her psychological issues made her particularly vulnerable to coercion. However, Blackmon was forensically evaluated and found to be competent to waive her constitutional rights, despite her psychological history, age, and lack of contact with the criminal justice system. Thus, the forensic examination supports a finding that Blackmon was competent to waive her rights and voluntarily give a statement. Because the record does not contain any evidence of actual police coercion or misconduct that induced Blackmon's statements, the record does not support Blackmon's claim that defense counsel was ineffective for deciding to withdraw the suppression motion and forego an evidentiary hearing on this issue. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) (counsel is not ineffective for failing to advance a meritless position).

## 2. FAILURE TO MOVE FOR SEVERANCE

Blackmon also argues that defense counsel was ineffective for not moving for a separate trial, or requesting a separate jury to preclude the admission of Easterling's police statements.

MCR 6.121(A) allows for two or more defendants to be jointly charged for the same offense. Under MCR 6.121(C), a court "must sever the trial of defendants on related offenses on a showing that severance is necessary to avoid prejudice to the substantial rights of the defendant." MCR 6.121(D) also provides a trial court with discretion to order separate trials. That rule states:

**Discretionary Severance**.  On the motion of any party, the court may sever the trial of defendants *on the ground that severance is appropriate to promote fairness to the parties and a fair determination of the guilt or innocence of one or more of the defendants*.  Relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of defendants or the complexity or nature of the evidence, the convenience of witnesses, and the parties' readiness for trial. [Emphasis added.]

Additionally, "[i]n *Bruton v United States*, 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968), the United States Supreme Court held that a defendant is deprived of his Sixth Amendment confrontation rights when a nontestifying codefendant's confession that inculpates the defendant is introduced at a joint trial." *People v Pipes*, 475 Mich 267, 269; 715 NW2d 290 (2006).

In this case, while any potential *Bruton* problem was alleviated when Easterling testified and was subject to cross-examination, there were other aspects of the joint trial that potentially raised issues of fairness such that counsel should have moved to sever the trials pursuant to MCR 6.121(C) and (D).  Specifically, at trial Detective Finkbeiner testified about out-of-court statements Easterling made to police that implicated Blackmon in the murder while tending to absolve Easterling.  While Finkbeiner's direct testimony was redacted, it was clearly implied that Blackmon delivered the first blow to the victim.  Furthermore, Easterling's defense was that he left the victim's home while Blackmon killed the victim.  Easterling testified that he left the house while Blackmon stayed inside with the victim for more than 10 minutes and he stated that Blackmon sent him a text message asking him to come back inside.

Moreover, on redirect, Finkbeiner offered more extensive testimony about the second out-of-court statement that Easterling gave to police.  The testimony was admitted in response to Easterling's testimony that "opened the door," and was admissible as an admission.  Specifically, Finkbeiner testified that Easterling informed police that Blackmon wanted to assault the victim, asked him if he had a gun, and gave him a brick to use to assault the victim.  Easterling stated that he and defendant went to the victim's house, and Blackmon refused his requests to leave, and instead indicated that "this is going to happen."  Easterling described how he heard the victim state, "ouch," and saw Blackmon and the victim "wrapped up;" Easterling admitted punching the victim twice, but stated that Blackmon kept hitting the victim "over and over" and that Blackmon used a dumbbell while assaulting the victim.

In short, Easterling's presence in the proceeding opened the door for the prosecution to introduce Easterling's out-of-court statements to police that were detrimental to Blackmon, and Easterling's defense was to shift the blame to Blackmon.  Under these circumstances, trial counsel should have moved to sever the trials under either MCR 6.121(C) or (D) and failure to do so amounted to deficient performance on an objective standard of reasonableness. *Pickens*, 446 Mich at 338.

Although counsel rendered deficient performance in failing to move to sever the trials, Blackmon is not entitled to a new trial because she cannot show that, but for counsel's failure to move to sever the trials, the result of the proceeding would have been different. *Carbin*, 463

Mich at 599-600. Here, independent of Easterling's statements and testimony, there was substantial evidence of Blackmon's guilt. Jason Hise testified that at about the time of the murder, Blackmon solicited his help in killing a man and stealing his money, electronics, and marijuana. Blackmon later told Hise that she had "tooken [sic] care of it" when Hise asked about the man she wanted killed. Other evidence showed that the victim had posted an ad on Craigslist and that Blackmon responded to the ad and Blackmon's contact information was on the victim's phone. Blackmon's phone had messages on it to Easterling stating "we doing this," and she referenced hitting someone and looking on laptops to acquire bank information. Other text messages showed that Blackmon tried to sell marijuana after the murder and there were messages where Blackmon appeared to refer to the offense.

In addition, police found items in Blackmon's home that were purchased at a Meijer early on the morning that the victim's body was discovered. There was also evidence that the victim's credit card was used between 3:00 and 3:30 a.m. at a Meijer and Blackmon appeared on a store surveillance camera at that time. Other evidence showed that Blackmon's vehicle appeared on a gas station surveillance camera where the victim's credit card was used on the same morning that the victim was murdered. Police also found the victim's passport, medical marijuana card, credit card and driver's license at Blackmon's residence. The evidence also showed that defendant's vehicle had blood on the door handle and there was blood on a jacket inside the vehicle that contained the victim's DNA. Moreover, Blackmon admitted to police that she responded to the victim's personal ad, that she had recently started a relationship with him, and that she wanted to be "spoiled" by the victim. Blackmon also admitted to police that she hit the victim on the head with a lamp and a baseball bat and that she kicked him in the groin. Given the overwhelming evidence on the record, defendant cannot show that but for counsel's deficient performance, the result of the proceeding would have been different. *Carbin*, 463 Mich at 599-600. Further, in light of the existing record, she has not shown that this matter should be remanded for an evidentiary hearing to decide these claims. See *People v McMillan*, 213 Mich App 134, 142; 539 NW2d 553 (1995); *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985).

## B. SPEEDY TRIAL

Blackmon next argues that the trial court erred by failing to sua sponte dismiss this case for violation of her constitutional right to a speedy trial. See US Const, Am VI; Const 1963, art 1, § 20.

Because Blackmon failed to formally assert her right to a speedy trial in the trial court, this issue is unpreserved. *People v Rogers*, 35 Mich App 547, 551; 192 NW2d 640 (1971); see also *People v Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999). We review unpreserved claims of constitutional error for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

In evaluating a defendant's speedy trial claim, this Court must "balance the following four factors: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *People v Cleveland Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). A speedy trial claim is evaluated by measuring the time from the date of the defendant's arrest until the time of trial. *Id.* Where the delay is greater than 18 months, prejudice is presumed and the prosecution has the burden of showing that there was no injury to

the defendant. *Id*. at 262. When the delay is less than 18 months, the burden is on the defendant to show prejudice from the delay. *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013).

In this case, Blackmon was arrested in March 2015 and her trial began less than 11 months later, in February 2016. The length of the delay does not weigh in favor of a speedy trial violation. The record also discloses that several delays were attributable to Blackmon's requests to be evaluated for her competency to stand trial and to determine her criminal responsibility, as well as her request for a deviation assessment. She also contemplated challenging the admissibility of her police statements and a suppression hearing was scheduled and then adjourned for that purpose, but then counsel withdrew the suppression motion after obtaining the results of the competency evaluation. As indicated, Blackmon never formally asserted her right to a speedy trial. Finally, and more significantly, Blackmon has not demonstrated that any delay actually prejudiced her defense. Blackmon makes only vague claims that witnesses were no longer available to support her defense, but she does not identify any such witnesses or explain how their unavailability was caused by any delay. A general allegation of prejudice, such as the unspecified loss of evidence or memory, is insufficient to establish that a defendant was denied her right to a speedy trial. *People v Gilmore*, 222 Mich App 442, 461-462; 564 NW2d 158 (1997). Blackmon's generalized assertion that she experienced stress from her continued incarceration is also insufficient, because anxiety alone is insufficient to establish a violation of the right to a speedy trial. *Id*. at 461-462. Accordingly, balancing the relevant factors shows that Blackmon was not denied her right to a speedy trial.[2]

## C. DOUBLE JEOPARDY

Blackmon next argues that her dual convictions of first-degree premeditated murder and first-degree felony murder, arising from the death of one victim, violate double jeopardy protections. Plaintiff concedes, and we agree, that Blackmon cannot stand convicted of two counts of first-degree murder for causing a single death. The appropriate remedy is to remand this case for modification of Blackmon's judgment of sentence to specify a single conviction and sentence for first-degree murder, supported by two different theories: felony murder and premeditated murder. *People v Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001); *People v Bigelow*, 229 Mich App 218, 220-221; 581 NW2d 744 (1998). Accordingly, we remand for this limited purpose.

## D. ADMISSION OF PHOTOGRAPHS

Next, Blackmon argues that the trial court erred in admitting several photographs from Freeland's autopsy. She argues that the photos were unnecessary because they were cumulative

---

[2] Blackmon's reliance on MCR 6.004(C) is misplaced because that rule applies only to motions for personal recognizance bonds. A violation of MCR 6.004(C) does not require dismissal, which is the remedy for a speedy trial violation. See *People v O'Quinn*, 185 Mich App 40, 45; 460 NW2d 264 (1990), overruled on other grounds by *People v Koonce*, 466 Mich 515, 516 (2002).

to the medical examiner's testimony and, because of their graphic nature, any probative value of the photos was outweighed by their potential to cause unfair prejudice. We review the trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id.*

"Photographs are admissible if substantially necessary or instructive to show material facts or conditions." *People v Hoffman*, 205 Mich App 1, 18; 518 NW2d 817 (1994). "If photographs are otherwise admissible for a proper purpose, they are not rendered inadmissible merely because they vividly portray the details of a gruesome or shocking accident or crime, even though they may tend to arouse the passion or prejudice of the jurors." *Id.* Autopsy photographs are considered relevant under MRE 401 when they are instructive in depicting the nature and extent of the victim's injuries. *People v Flowers*, 222 Mich App 732, 736; 565 NW2d 12 (1997). Although photos may be excluded under MRE 403 if they are unfairly prejudicial under MRE 403, photographs are not excludable simply because a witness can orally testify about the same information. *People v Mills*, 450 Mich 61, 76; 537 NW2d 909 (1995), modified 450 Mich 1212 (1995). Photos may also be admitted to corroborate a witness's testimony. *Id.* Whether photos should be excluded depends on whether their probative value is substantially outweighed by the danger of unfair prejudice. *Id.*; MRE 403. Photos that depict the gruesome nature of a crime and are not pertinent, relevant, or material to any issue in the case, but serve only to inflame the jurors' minds and prejudice them against the defendant, should be excluded. *Mills*, 450 Mich at 77.

The trial court admitted seven photographs from Freeland's autopsy. Although the photos graphically display Freeland's injuries, the nature and extent of the injuries he received during the offense were probative of defendants' intent to harm or kill Freeland. The photos were also relevant to the credibility of the defendants' police statements in that they provided the jury with a visual means for determining whether the limited assaults described in the defendants' police statements were consistent with Freeland's actual injuries as depicted in the photos. The fact that the medical examiner was able to verbally describe the injuries in his testimony did not require exclusion of the photos. Indeed, the witness used the photos to explain his testimony.

Blackmon has also failed to show that the photographs were unfairly prejudicial. One of the photographs graphically depicted Freeland's burnt extremities, but that was how his body was found and the photo depicts the injuries he received from the blunt force trauma. The record discloses that the trial court was selective in deciding which photos to admit, and endeavored to admit only photos that were independently relevant and not cumulative. This selective process demonstrates that the trial court appropriately exercised its discretion and had a principled basis for admitting the photos in question. In addition, because Freeland's injuries were primarily to his head, face, and neck, it was not inappropriate to admit photos that included his face. *People v Howard*, 226 Mich App 528, 550; 575 NW2d 16 (1997). Accordingly, the trial court did not abuse its discretion in admitting the challenged photographs.

## II. DOCKET NO. 332702 (DEFENDANT EASTERLING)

### A. SUFFICIENCY OF THE EVIDENCE

Easterling argues that the evidence was insufficient to support his convictions of first-degree felony murder, armed robbery, and conspiracy to commit armed robbery. We disagree.

In reviewing a challenge to the sufficiency of the evidence in support of a conviction, we review the evidence de novo, viewing it in a light most favorable to the prosecution, to determine whether a rational trier of fact could have found that the essential elements of the charged crime were proved beyond a reasonable doubt. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006); *People v Schaw*, 288 Mich App 231, 233; 791 NW2d 743 (2010). Circumstantial evidence and any reasonable inferences arising from the evidence may be sufficient to prove the elements of a crime. *People v Abraham*, 234 Mich App 640, 656; 599 NW2d 736 (1999). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v John Williams, Jr*, 268 Mich App 416, 419; 707 NW2d 624 (2005). All conflicts in the evidence must be resolved in favor of the prosecution. *Id*.

The prosecutor argued that Easterling was guilty as either a direct principal or an aider or abettor. To find that a defendant aided or abetted a crime, the prosecution must show that (1) the crime charged was committed by the defendant or another person, (2) the defendant performed acts or gave encouragement that assisted in the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. *Carines*, 460 Mich at 757; see also *People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006). An aider and abettor's state of mind may be inferred from all of the facts and circumstances of the crime. *Carines*, 460 Mich at 757. Factors that can be considered include a close association between the principal and the defendant, the defendant's participation in the planning and execution of the crime, and evidence of flight after the crime. *Id*. at 757-758. However, "[m]ere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to show that a person is an aider and abettor." *People v Wilson*, 196 Mich App 604, 614; 493 NW2d 471 (1992).

### 1. FELONY MURDER

In *Carines*, 460 Mich at 758-759, our Supreme Court explained the elements of felony murder, as applied to either a direct principal or an aider or abettor:

> The elements of felony murder are: (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [the statute, including armed robbery]. . . .

The facts and circumstances of the killing may give rise to an inference of malice. A jury may infer malice from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm. *Id*. Malice may also be inferred from the use of a deadly weapon. . . . .

> "In situations involving the vicarious liability of cofelons, the individual liability of each felon must be shown. It is fundamentally unfair and in violation of basic principles of individual criminal culpability to hold one felon liable for an unforeseen death that did not result from actions agreed upon by the participants. In cases where the felons are acting intentionally or recklessly in pursuit of a common plan, liability may be established on agency principles. If the homicide is not within the scope of the main purpose of the conspiracy, those not participating are not criminally liable."

See also *People v Aaron*, 409 Mich 672, 731; 299 NW2d 304 (1980). [Citations omitted.]

The evidence showed that Freeland died from blunt force trauma after Easterling and Blackmon entered his home. Before the offense, Blackmon had contacted another person and asked him to assist her in robbing and killing Freeland. In his second statement to the police, Easterling admitted going to Freeland's house with Blackmon to assault him because Blackmon told him that Freeland had assaulted and taken money from a relative. While Easterling stated that he had second thoughts after he met Freeland, he also admitted that he began punching Freeland after Blackmon first hit Freeland. Easterling admitted that he punched Freeland hard enough to knock him to the ground. Easterling also admitted taking Freeland's laptop before leaving the house, and to throwing dumbbells that were used to assault Freeland out a car window along the freeway. The medical examiner testified that Freeland died from blunt force trauma to his head. Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to find beyond a reasonable doubt that Easterling went to Freeland's house with Blackmon with the intent to rob and harm Freeland, and that both defendants were involved in physically assaulting Freeland and stealing his property. Regardless of which defendant inflicted the more severe injuries or fatal blow, their joint participation in assaulting Freeland and stealing his property shows that they shared a common intent. Thus, the evidence was sufficient to support Freeland's conviction of felony murder as a direct principal or an aider or abettor.

## 2. ARMED ROBBERY

The elements of armed robbery are (1) an assault, (2) a felonious taking of property from the victim's presence or person, and (3) while the defendant is armed with a weapon described in MCL 750.529. *People v Rodgers*, 248 Mich App 702, 707; 645 NW2d 294 (2001). For purposes of armed robbery, a weapon includes a dangerous weapon "or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon." MCL 750.529.

Again, the evidence supported a finding that Easterling and Blackmon both went to Freeland's home intending to assault and rob him, and the evidence showed that both defendants participated in physically assaulting Freeland and stealing his property. The evidence that a bat or dumbbells were used to assault Freeland was sufficient to enable the jury to find beyond a reasonable doubt that he was assaulted with "an article used or fashioned in a manner to lead any

person present to reasonably believe the article is a dangerous weapon." In addition, even if it was Blackmon who used those items, the evidence that Easterling and Blackmon shared a common intent and that Easterling personally participated in assaulting Freeland, and thereby facilitated Blackmon's assault with a bat or dumbbells, was sufficient to find Easterling guilty of armed robbery under an aiding or abetting theory.

### 3. CONSPIRACY TO COMMIT ARMED ROBBERY

The crime of conspiracy involves two or more persons voluntarily agreeing to effectuate the commission of a criminal offense. There must be evidence that the individuals specifically intended to combine to commit a crime. *People v Justice*, 454 Mich 334, 345-346; 562 NW2d 652 (1997). Direct proof of a conspiracy is not necessary. A conspiracy can be shown from the circumstances, acts, and conduct of the parties. *Id*. at 347.

As noted, Easterling admitted that he agreed to go to Freeland's house with Blackmon for the purpose of assaulting Freeland. Once Freeland was incapacitated, both defendants took items from the house. The jury could infer from the circumstances that Easterling conspired with Blackmon to rob Freeland. *Id*.

### B. DEFENDANT EASTERLING'S STANDARD 4 BRIEF

Defendant Easterling raises additional issues in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.

### 1. DOUBLE JEOPARDY

We agree with Easterling's argument that his dual convictions of first-degree felony murder and second-degree murder, arising from the death of one victim, violate double jeopardy protections. *People v Clark*, 243 Mich App 424, 429; 622 NW2d 344 (2000). The appropriate remedy is to vacate Easterling's conviction and sentence for second-degree murder. *Id*. at 429-430. Accordingly, Easterling's conviction and sentence for second-degree murder are vacated.

Contrary to what Easterling argues, however, his multiple convictions for felony murder and the predicate offense of armed robbery do not implicate double jeopardy protections. See *People v Ream*, 481 Mich 223, 225-226, 240; 750 NW2d 536 (2008) (convictions for both felony murder and the underlying felony do not violate double jeopardy if each offense contains an element that the other does not); *People v Smith*, 478 Mich 292, 318-319; 733 NW2d 351 (2007) (felony murder and armed robbery are not the "same offense" for purposes of double jeopardy analysis).

### 2. PRESERVATION OF EVIDENCE

Easterling also argues that he is entitled to appellate relief because the prosecution failed to preserve an audio recording of his second police interview. Easterling did not object at trial to the testimony regarding his police interview, and did not otherwise raise this issue before or during trial. Therefore, the issue is unpreserved, and our review is limited to plain error affecting Easterling's substantial rights. *Carines*, 460 Mich at 763-764.

The state's failure to preserve potentially useful evidence does not constitute a due process violation unless the defendant can demonstrate bad faith. *Arizona v Youngblood*, 488 US 51, 58; 109 S Ct 333; 102 L Ed 2d 281 (1988). "If the defendant cannot show bad faith or that the evidence was potentially exculpatory, the state's failure to preserve evidence does not deny the defendant due process." *People v Heft*, 299 Mich App 69, 79; 829 NW2d 266 (2012). First, Easterling has not shown that this case even involves a failure to preserve evidence. The record discloses that Easterling's second interview was never successfully recorded in the first instance due to an equipment malfunction. This case does not involve a situation in which a recording was created, but not preserved. Second, there is no basis for finding that the police acted in bad faith. The testimony that was offered on this matter indicated that the police attempted to record Easterling's interview, but the interview was not recorded due to a mechanical error. This circumstance does not support a finding of bad faith. Third, there is no basis for concluding that Easterling's second interview was potentially exculpatory. The officer who interviewed Easterling testified that Easterling admitted during the interview that he punched Freeland and stole his laptop. Easterling suggests that a recording of the interview would have been exculpatory because it would have shown that he did not make these admissions. However, it was during the second interview that the police learned from Easterling that he discarded some dumbbells along I-75, and the police subsequently found some dumbbells along I-75 that contained Freeland's DNA. In addition, although Easterling denied admitting during the second interview that he stole Freeland's laptop, a search of Easterling's cell phone records indicated that he tried to sell a laptop computer after the crime. The record does not support a finding that the evidence was exculpatory.

In sum, Easterling has failed to show that a recording of his second interview actually existed and was not preserved. Further, there is no basis for finding that the police acted in bad faith with respect to this matter, or that any recording would have been potentially exculpatory. Therefore, Easterling has not established a plain error.[3]

### III. CONCLUSION

In Docket No. 332644, we remand for modification of Blackmon's judgment of sentence to reflect a single conviction and sentence for first-degree murder, supported by two alternative theories. In Docket No. 332702, we vacate Easterling's conviction and sentence for second-degree murder conviction. We affirm both defendants' convictions and sentences in all other respects.

---

[3] Although not mentioned by Easterling, we note that MCL 763.8(2) requires law enforcement officials to "make a time-stamped, audiovisual recording of the entire interrogation," when questioning an individual in custody regarding that individual's involvement in the commission of a major felony. However, violation of the statute does not prevent a law enforcement official present during the taking of the statement from testifying in court as to the circumstances and content of the individual's statement if the court determines that the statement is otherwise admissible. MCL 763.9.

-12-

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Stephen L. Borrello
/s/ Michael J. Riordan