*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RACHEL LEANN CORSER,

        Defendant-Appellant.

UNPUBLISHED
October 24, 2019

No. 343635
Washtenaw Circuit Court
LC No. 16-000905-FH

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BILLIE JOYCE MONTANGE,

        Defendant-Appellant.

No. 343636
Washtenaw Circuit Court
LC No. 16-000904-FH

Before: FORT HOOD, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

In these consolidated cases, defendant, Rachel Leann Corser, appeals as of right her convictions and sentences for one count of first-degree home invasion, MCL 750.110a(2); and one count of interfering with electronic communication, MCL 750.540(1); and defendant, Billie Joyce Montange, appeals as of right her conviction of conspiracy to commit first-degree home invasion, MCL 750.157a. We affirm both convictions and Corser's sentence, but we remand to the trial court for the ministerial task of correcting an error in the judgment of sentence.

This case involves a break-in by defendants at Derek Corser's home. Derek is Corser's brother and Montange's son. Derek's ex-girlfriend, the victim, was staying at the house the week before the pair broke up. After a fight that turned violent and a call to the police, Derek and the victim broke up late one night. Derek left and slept elsewhere; the victim slept at

-1-

Derek's house. The following morning, the victim awoke to a text message from Montange telling her that Montange and Corser were on their way to the house, and that if the victim was still there when they arrived, they were going to "wipe or smack or—the smirk off [the victim's] face."

The victim saw Montange's car pull up in the driveway and heard defendants yelling and shouting. From where she was standing outside of her bedroom, the victim watched defendants open the bedroom window and attempt to come in the home. Montange gave Corser "a boost," and Corser climbed into the bedroom and over the bed, eventually coming into the hallway toward the victim. Montange climbed in after Corser.

Corser grabbed the victim's phone from her hand while the victim was dialing 911. The victim ran to the kitchen to evade Corser, and repeatedly asked Corser to return her phone to her and said that she would "be more than happy to leave." Defendants continued to "yell[]" at the victim that she would not get her phone back and that she needed to get out of Derek's house. The victim was in the kitchen talking to Corser while Montange was "frantically . . . going through the house and . . . grabbing [the victim's] things and, like, throwing them around as all this is going on." Corser grabbed a serrated knife from the kitchen sink and was "waiving" it at the victim before she "pointed" it at her. Corser repeatedly told the victim to leave, and the victim did. She ran to a nearby gas station and called 911. While she was on the phone with 911, she watched defendants drive away, so she returned to the house to find her cell phone smashed outside.

Defendants were tried at the same time but before separate juries, and were found guilty as noted above. These appeals followed.

Corser first argues that she was denied the right to a fair trial because she received ineffective assistance of counsel. We disagree.

Generally, "[t]he question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). However, because the trial court denied Corser's motion and no *Ginther*[1] hearing was held, this Court's review is limited to mistakes apparent on the record. See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). We review a trial court's decision on a motion for a new trial for an abuse of discretion, which occurs when the trial court renders a decision that falls outside the range of principled decisions. *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012).

Both the Michigan and the United States Constitutions guarantee defendants the assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. To obtain a new trial, a defendant must show that (1) trial counsels' performance fell below an objective standard of reasonableness, and (2) but for counsel's deficient performance, there is a reasonable probability

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-2-

that the outcome would be different. *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298; 521 NW2d 797 (1994). Defendant must overcome a strong presumption that counsel's performance was sound trial strategy. See *Strickland*, 466 US at 689. Defense counsel retains the "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id*. at 691. To establish prejudice, defendant must show a reasonable probability that the outcome would have been different but for counsel's errors. See *Strickland*, 466 US at 694. A reasonable probability need not be a preponderance of the evidence; rather, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

Defendants are guaranteed the effective assistance of counsel during the pretrial process, including during plea bargaining. *Lafler v Cooper*, 566 US 156, 163; 132 S Ct 1376; 182 L Ed 2d 398 (2012); *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014). Defense counsel is required to communicate plea offers to the defendant and to give competent advice regarding whether to accept or reject the offer. *Lafler*, 556 US at 163. When a defendant argues that defense counsel's ineffectiveness resulted in prejudice because the defendant rejected a plea offer and proceeded to trial, the defendant must show that:

> but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed [*Id*. at 164].

As with any claim of ineffective assistance of counsel, a "defendant has the burden of establishing the factual predicate of his ineffective assistance claim." *Douglas*, 496 Mich at 592.

Corser first argues that defense counsel was ineffective for providing poor advice during the plea-bargaining stage. Corser attached an affidavit to her motion for a new trial stating that she was unaware of the applicable sentencing guidelines, and that her attorney did not review the difference between the plea offers and the potential sentence she faced if convicted at trial. Corser argues that she would have accepted a plea offer if she was aware that she was facing a possible prison sentence if convicted at trial. This argument is contradicted by the record, and is without merit.

First, Corser does have a lengthy criminal record, evidencing at least some familiarity with the criminal justice system. Corser had repeatedly been convicted of crimes involving theft or dishonesty, including multiple counts of retail fraud, uttering and publishing, and providing false information to a police officer. Corser's record extends back to when she was a minor. The trial court was also able to consider Corser's affidavit stating that she was unaware of the possible sentence. The trial court considered these conflicting pieces of information and found that Corser "certainly" had "some level of knowledge" about the criminal justice system. The evidence supports this conclusion; while she may not have been aware that she was facing exactly 57 months in jail, she was aware that some sentence would be imposed if she were convicted of a crime, as had happened on multiple occasions before.

Additionally, Corser has not proven that she would have accepted the plea offer. Corser stated at sentencing that she "didn't realize, you know, that [she] was doing anything wrong by going to [her] brother's home . . . ." Corser stated that she "had no intentions on harming [the victim]," she did not "have a mean bone in her body," and that she does not assault people. Corser reiterated that she "didn't know that [she] was doing anything wrong." Corser did not take responsibility for her actions at sentencing, even after a guilty verdict; it is not apparent from the record that she would have accepted responsibility for her actions via a plea deal.

This is confirmed by the multiple plea offers that Corser rejected. At three separate pretrial hearings, defense counsel noted that there were plea offers on the table that he needed to present to Corser. Trial was adjourned three times over six months while defense counsel presented these plea offers to Corser. At the final pretrial hearing, defense counsel stated that he had discussed the available plea deals with Corser, but that "it is her understanding that there aren't going to be any more offers, that we're just going to try this and let a jury decide it." The record shows that defense counsel spent six months discussing plea offers with Corser, and that she appears to have rejected multiple plea offers.

For these reasons, it is not apparent from the record that if defense counsel had given Corser different advice, she would have accepted the plea offer. Therefore, Corser has failed to show that defense counsel's conduct prejudiced her. See *Lafler*, 566 US at 164; *Douglas*, 496 Mich at 592. It follows that defense counsel was effective during plea bargaining. See *Strickland*, 466 US at 694.

Corser next argues that defense counsel was ineffective for advising her not to testify at trial because her credibility would be attacked via her criminal record. However, she has not overcome the presumption that this advice was sound trial strategy, so this argument is without merit.

At trial, defense counsel has wide discretion as to matters of trial strategy. *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). We will not substitute our judgment for that of counsel regarding matters of trial strategy, nor will we assess counsel's competence with the benefit of hindsight. *Strickland*, 466 US at 689; *Payne*, 285 Mich App at 190. The fact that defense counsel's strategy ultimately failed does not render it ineffective assistance of counsel. *People v Stewart*, 219 Mich App 38, 42; 555 NW2d 715 (1996).

Corser argues that, if she had testified, she would have denied being at the home while the victim was present, and that she would deny assaulting the victim. Corser would also have testified that she had permission from Derek to be in the home. Corser argues she was the only person who could have testified as to these facts, so it was crucial for her to testify, and defense counsel's advice that she should not testify was erroneous. However, these facts are inherently contradictory: it is impossible to both not be present at the home, and also to be present with permission, without being in two places at once. Further, this contradicts defense counsel's closing argument, where he acknowledges that Corser admitted to Derek that she went to the house and opened the window to scare the victim. Therefore, it is reasonable to assume that defense counsel advised Corser not to testify because her proffered testimony was contradictory to itself and to the evidence presented, and it would make her less credible to the jury. It was reasonably sound trial strategy to advise Corser not to testify. See *Heft*, 299 Mich App at 83.

-4-

Corser has failed to satisfy the first prong of the ineffective assistance of counsel test. See *Strickland*, 466 US at 689.

Corser fails to adequately address the second prong of the ineffective assistance of counsel test: prejudice. See *Pickens*, 446 Mich at 338. To establish prejudice, defendant must show a reasonable probability that the outcome would have been different but for counsel's errors. *Strickland*, 466 US at 694. Corser simply argues that, absent defense counsel's errors, "it is highly unlikely that Ms. Corser would have been found guilty of the crimes charged and it appears clear that prejudice has been met and that this Court must set the Defendant's conviction aside." Corser fails to support her argument on this point. It is well settled that an "appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 641; 588 NW2d 480 (1998). Defendant must satisfy both prongs of the test, but she has failed to support the second prong. Therefore, this argument fails.

Corser also argues that defense counsel was ineffective for failing to object to the introduction of Derek's criminal history. Corser argues that evidence introduced regarding a PPO against Derek and the complaints of domestic violence against him destroyed his credibility, and was introduced only to make him look bad and to inflame the jury. The evidence was, in Corser's view, irrelevant and highly prejudicial and defense counsel should have objected to it.

Corser's argument here fails: she simply states that the evidence should have been "excluded pursuant to MRE 401, 403, and 404." She does not explain why the evidence should have been excluded. Again, a defendant may not simply announce her position and leave it for this Court to construct the argument. See *Kelly*, 231 Mich App at 641. Therefore, this argument fails. Defense counsel was effective.

Corser next argues that the trial court erred when it assessed 15 points for Offense Variable (OV) 19 at sentencing. We disagree.

To preserve a scoring error claim, the defendant must raise the issue at sentencing, in a motion for resentencing, or in a motion to remand filed in the Court of Appeals. MCL 769.34(10); *People v Kimble*, 470 Mich 305, 310; 684 NW2d 669 (2004). Defendant raised this objection at sentencing. Therefore, the issue is preserved. When a sentencing guidelines scoring issue is preserved, the trial court's factual determinations "are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring condition prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

OV 19 addresses interference with the administration of justice or the rendering of emergency services. The trial court must assess 15 points if "[t]he offender used force or the threat of force against another person or the property of another person to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services." MCL 777.49(b). The court must assess 10 points if "[t]he

-5-

offender otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49(c).[2] The court may assess zero points if the offender did not attempt to interfere with the administration of justice or the rendering of emergency services. MCL 777.49(d).

We have explained "force" as it is used in OV 19:

> if an offender threw a victim's cell phone into a lake, such action necessarily would involve the use of force against the property of another. Likewise, if the offender threatened to throw a victim's cell phone into the lake, then the action would involve the threatened use of force against the property of another. In either case, if the reason for the offender's action was to prevent or discourage the victim from reporting a crime, then the offender's actions would constitute interference with the administration of justice that would justify a score of 15 points under OV 19. [*People v Smith*, 318 Mich App 281, 287; 897 NW2d 743 (2016).]

Corser argues that there was no evidence presented to show that she knew or had reason to know that the victim was calling 911 when she took the cell phone, so OV 19 would properly be scored at zero points. While it is true that there was no direct evidence that Corser knew the victim was calling 911, the record evidence shows that Corser was attempting to prevent the victim from calling for help. The victim testified that as soon as Corser was in the home, she took the victim's phone. The victim asked for her phone back and in response, Corser picked up a knife from the kitchen sink and waved it at the victim. Corser repeatedly refused to return the phone to the victim. It is clear that Corser intended to remove the victim's cell phone to "prevent or discourage" her from reporting the crime. See *Smith*, 318 Mich App at 287. Further, Corser was waving a knife at the victim: an implied threat of force against her person. Therefore, the trial court's finding that Corser took the victim's cell phone to prevent the victim from contacting law enforcement, and the finding that Corser threatened force against the victim in the process of doing so, are supported by the record evidence. See *id*. The trial court did not err when it assessed 15 points for OV 19.

Defendant also argues that the trial court erred when it assessed OV 19 on the basis of conduct outside the sentencing offense. It is unclear what separate conduct Corser is referring to, but regardless, this argument fails on the law and on the facts. First, our Supreme Court has explained that OV 19 does contemplate postoffense conduct by a necessary implication: this factor considers events that almost always occur after the charged offense is completed. See *People v Smith*, 488 Mich 193, 200; 793 NW2d 666 (2010). The language of OV 19 "explicitly indicates that postoffense conduct may be considered when scoring OV 19." *Id*. Therefore, the trial court did not err if it considered postoffense conduct. Further, defendant was convicted of home invasion, and the conduct involving the cell phone occurred while defendant was in the

---

[2] MCL 777.49(c) was amended effective March 18, 2019, to include "or directly or indirectly violated a personal protection order" at the end of subsection (c). See MCL 777.49(c) as amended by 2018 PA 652.

home. Therefore, the events relating to OV 19 were committed at the same time as the home invasion, so no behavior "outside the offense being scored" was taken into account by the trial court. Therefore, Corser's argument fails; the trial court did not err when it considered Corser's actions with the victim's cell phone. The trial court did not err when it assessed 15 points for OV 19, and accordingly, Corser is not entitled to resentencing.

Montange argues that there is insufficient evidence to support her conviction of conspiracy to commit first-degree home invasion. We disagree.

A claim of constitutionally insufficient evidence may be raised for the first time on appeal, without any requirement of a motion for directed verdict at trial or a motion for new trial. *People v Patterson*, 428 Mich 502, 514; 410 NW2d 733 (1987). A challenge to the sufficiency of the evidence is reviewed de novo. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001). We must review the evidence in the light most favorable to the prosecution. *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). We do "not consider whether any evidence existed that could support a conviction, but rather," we determine "whether a rational trier of fact could find that the evidence proved the essential elements of the crime beyond a reasonable doubt." *Id*.

MCL 750.157a prohibits the crime of conspiracy: "[a]ny person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy . . . ." "Under such a partnership, two or more individuals must have voluntarily agreed to effectuate the commission of a criminal offense." *People v Justice*, 454 Mich 334, 345; 562 NW2d 652 (1997). Conspiracy requires "both the intent to combine with others and the intent to accomplish the illegal objective." *People v Mass*, 464 Mich 615, 629; 628 NW2d 540 (2001). It is critical for the prosecution to establish that the individuals specifically intended to combine to pursue the criminal objective of their agreement because "[t]he crime is complete upon formation of the agreement[.]" *People v Carter*, 415 Mich 558, 568; 330 NW2d 314 (1982). Because of their nature, conspiracies are often difficult to prove. "Thus, direct proof of the conspiracy is not essential; instead, proof may be derived from the circumstances, acts, and conduct of the parties." *Justice*, 454 Mich at 347. "Inferences may be made because such evidence sheds light on the coconspirators' intentions." *Id*. However, these inferences must be reasonable. *Id*.

The underlying offense that Montange was charged with is first-degree home invasion in violation of MCL 750.110a(2). Therefore, the prosecution must prove that Montange specifically intended to combine with another individual to accomplish a first-degree home invasion, and that the agreed-upon intended conduct included all of the elements of first-degree home invasion. See *Mass*, 464 Mich at 629.

In 2010, our Supreme Court laid out the elements of first-degree home invasion:

Element One: The defendant *either*:

      1. breaks and enters a dwelling or

      2. enters a dwelling without permission.

-7-

Element Two: The defendant *either*:

>1. intends when entering to commit a felony, larceny, or assault in the dwelling or

>2. at any time while entering, present in, or exiting the dwelling commits a felony, larceny, or assault.

Element Three: While the defendant is entering, present in, or exiting the dwelling, *either*:

>1. the defendant is armed with a dangerous weapon or

>2. another person is lawfully present in the dwelling.

[*People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010).]

The term "without permission" is defined by statute as "without having obtained permission to enter from the owner or lessee of the dwelling or from any other person lawfully in possession or control of the dwelling." MCL 750.110a(1)(c). It follows that if the defendant has a legal right to enter the premises, there is no home invasion. See *People v Rider*, 411 Mich 496, 497-501; 307 NW2d 690 (1981) (holding that a defendant does not commit a breaking and entering if access has been granted to him via a key entrusted to him without restrictions on its use); *People v Brownfield*, 216 Mich App 429, 432; 548 NW2d 248 (1996) (holding that a defendant does not commit a breaking and entering if he has a right to enter the building, even if he commits a larceny inside the building).

Montange argues on appeal only that she had permission to enter the home, so the first element of first-degree home invasion was not present; therefore, she could not be guilty of conspiracy to commit first-degree home invasion. However, when viewing the evidence in the light most favorable to the prosecution, it becomes clear that the record evidence supports Montange's conviction.

Derek testified that Montange had permission to be in the house, and that she had a key. However, the victim testified that she did not know if Montange had a key, but that she had never seen Montange use a key if she did have one. Viewing these conflicting statements in the light most favorable to the prosecution: Montange did not use a key when she previously visited the house, and it is unclear whether she had a key at all. Therefore, we cannot infer that she had a key with unrestricted access, so it remains possible that she entered the home without permission on the date in question. Cf. *Rider*, 411 Mich at 497-501.

Further, the victim testified that Montange helped Corser enter the home through the bedroom window rather than through either door. The victim also testified that Montange had texted her to threaten her into leaving. These facts viewed in the light most favorable to the prosecution shows that Montange came to the home with malicious intent and knew that she did not have permission to enter the home. If Montange had permission to enter the home, and was doing so without malice, she could have simply used the front door or knocked, rather than climbing in a bedroom window.

-8-

Taking these facts together in the light most favorable to the prosecution shows that Montange came to the home with the intent to scare or harm the victim, that she implicitly agreed to help Corser enter the home without permission, and that she entered the home without permission. Therefore, the record evidence supports the jury's finding that Montange was guilty of conspiracy to commit first-degree home invasion. See *Mass*, 464 Mich at 629.

Finally, Montange argues that her due-process rights were violated when evidence regarding crimes allegedly commited by Corser were presented to the jury deciding Montange's case. We disagree.

Generally, issues must be raised before and considered by the trial court to be preserved for appellate review. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Montange did not present this argument to the trial court. Therefore, this issue is unpreserved. Unpreserved claims of error are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Plain error affects substantial rights when it alters the outcome of the trial court proceedings. *Id*. Reversal is appropriate when an error is so serious it results in the conviction of an innocent defendant or when it affects the fairness, integrity, or public reputation of the judicial proceedings, independent of the defendant's innocence. *Id*. at 763-764.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. The Michigan Rules of Evidence prohibit the introduction of irrelevant evidence. MRE 402. Further, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

"In general, each conspirator is held criminally responsible for the acts of his associates committed in furtherance of the common design, and, in the eyes of the law, the acts of one or more are the acts of all the conspirators." *People v Grant*, 455 Mich 221, 236; 565 NW2d 389 (1997). Therefore, evidence that is relevant to acts committed in furtherance of the conspiracy is relevant to all coconspirators, regardless of whether the coconspirator physically took each act. See *People v Houseman*, 128 Mich App 17, 23-24; 339 NW2d 666 (1983).

Montange has failed to identify what "evidence and argument" specifically violated her rights or deprived her of a fair trial. As stated above, an "appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Kelly*, 231 Mich App at 641. Therefore, this argument fails because Montange has failed to identify what evidence violated her due-process rights, let alone explain how her rights were violated.

As a final matter, we note that the judgment of sentence erroneously reflects that Corser's sentence for interfering with an electronic communication device is one month to two years. As stated earlier, the correct sentence is one year to two years. Hence, we remand to allow the trial court to amend the judgment of sentence for the ministerial task of correcting the judgment of

sentence.  See *People v Katt*, 248 Mich App 282, 311-312; 639 NW2d 815 (2001), aff'd 468 Mich 272 (2003).

We affirm in Docket No. 343636.  In Docket No. 343635, we affirm but remand to the trial court consistent with this opinion.  We do not retain jurisdiction.


/s/ Karen M. Fort Hood
/s/ David H. Sawyer
/s/ Douglas B. Shapiro